# Estate of DeMutis v. Erie Insurance Exchange

C.P. of Allegheny County, no. GD 01-007665.

*Michael E. Fiffik,* for plaintiff.
*Arthur J. Leonard,* for defendant.

BALDWIN, *J.,* October 21, 2003—Plaintiff, the estate of Cecil Anthony DeMutis, deceased, appeals the judgment entered against it on the pleadings in this matter concerning its right to benefits under an automobile insurance policy issued to Cecil Anthony DeMutis (Anthony) by the defendant, Erie Insurance Exchange.

On or about February 6, 2000, Anthony was a passenger in a Dodge Dynasty motor vehicle owned and operated by his father, Cecil Angelo DeMutis. Anthony's mother was also a passenger in the vehicle. The Dodge Dynasty was traveling in the City of Pittsburgh when it was struck head-on by another motor vehicle owned and operated by Dominic Russo. As a consequence of this accident, all of the occupants of both motor vehicles were killed. The only question before this court is the obligation of Erie to provide benefits to the estate.

Russo's vehicle was insured under a policy that is not at issue in this case. Russo's policy provided liability coverage in the amount of $100,000 per person.

Anthony's father's vehicle was insured by Nationwide Insurance Company. The Nationwide policy provided underinsured motorist coverage (UIM benefits) in the amount of $100,000 per person. Prior to bringing this action, the estate recovered $100,000 from the Russo policy and $100,000 from the Nationwide policy. The estate then presented a claim under the decedent's Erie policy for UIM benefits for the coverage amount of $50,000 but the claim was denied due to an exclusion in the Erie policy commonly referred to as the "household vehicle exclusion" or "family car exclusion." This exclusion provides that the Erie policy does not apply to "damages sustained by anyone we protect while occupying or being struck by a motor vehicle owned by you or a relative, but not insured under the uninsured or underinsured motorists coverage under this policy." See Erie policy attached to complaint. This suit seeking declaratory judgment followed.

All parties agree that by its terms, the Erie policy excludes coverage in this case. However, the estate argues that it is entitled to UIM benefits because the household exclusion is void as against public policy under the factual circumstances of this case. In its statement of matters complained of on appeal, the estate also argues that this court erred in determining that there were no material issues of fact pertaining to the applicability of the household exclusion. In addressing the estate's claims of error, a review of select case law is warranted.

In *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 640 A.2d 1234 (1994), the Supreme Court of Pennsylvania first addressed the enforceability of a "family car exclusion" which was challenged on the ground of public policy under the Motor Vehicle Financial Responsibility

Law, 75 Pa.C.S. §1701 et seq. (MVFRL). The exclusion in the *Paylor* case was defined in the policy at issue as excluding "a vehicle owned by or furnished or available for the regular use of the named insured or any family member from the definition of an underinsured motor vehicle." *Id.* at 585, 640 A.2d at 1234. In *Paylor,* Betty and Fred Dymond were killed in a single-vehicle accident while operating their motor home. The Dymonds had an automobile insurance policy for their motor home issued by Foremost Insurance Company. The Dymonds insured three other family vehicles under a Hartford Insurance policy. After recovering the policy limits under the Foremost policy, the estate of the Dymonds sought to recover UIM benefits under the Hartford policy. The Hartford Insurance Company declined coverage under the family car exclusion.

The Supreme Court upheld the Hartford Insurance Company's declination of coverage under the family car exclusion, reasoning that the estate of the Dymonds was not entitled to convert the relatively inexpensive underinsured motorist coverage of their other vehicles into more expensive liability coverage for their motor home. *Id.* at 597-98, 640 A.2d at 1241. The *Paylor* court explained that although the exclusion was generally not valid, the exclusion was not void as against public policy in that case because the Dymonds freely chose to carry less insurance on their motor home than on their other vehicles. *Id.* at 597, 640 A.2d at 1240-41. In *Paylor,* the court contrasted the facts of that case with the facts of a case decided by the Superior Court in *Marroquin v. Mutual Benefit Insurance Co.,* 404 Pa. Super. 444, 591 A.2d 290 (1991).

In *Marroquin,* the Superior Court addressed the situation where one brother as a pedestrian was struck by the car operated by another brother. Both brothers lived with their parents. The vehicle involved in the accident was covered by its own policy issued by Mutual Benefit Insurance Company. Mutual paid liability benefits to the injured brother. The injured brother then sought UIM coverage from his parents' automobile insurance policy, also issued by Mutual, which covered their personal vehicles. Mutual denied the UIM claim under the family car exclusion, which provided that an underinsured motor vehicle did not include any vehicle "[o]wned by or furnished or available for the regular use of you or any 'family member.' " *Id.* at 447, 591 A.2d at 292. The Superior Court held that the household exclusion was void as against public policy. *Id.* at 456, 591 A.2d at 296. The court reasoned that UIM coverage should follow the injured brother and that the only bar to coverage was that his brother owned the vehicle that struck him. *Id.* at 457, 591 A.2d at 297. Under these facts, the court reasoned, the exclusion was not justified because the injured brother was not trying to convert UIM coverage into liability coverage. *Id.*

Approximately one month after the *Paylor* decision but without citing to the *Paylor* opinion, the Supreme Court of Pennsylvania decided *Windrim v. Nationwide Insurance Co.,* 537 Pa. 129, 641 A.2d 1154 (1994). In *Windrim,* the court addressed the situation where an individual who lived with his mother was driving his own uninsured vehicle and was injured by an unidentified hit-and-run driver. The injured person attempted to recover benefits under his mother's policy but was denied under that policy's household exclusion. The household

exclusion provided in pertinent part that coverage "does not apply to bodily injury suffered while occupying or from being hit by a motor vehicle owned by you or a relative living in your household, but not insured for . . . underinsured motorists coverage under this policy." *Id.* at 131, 641 A.2d at 1155. Without mentioning any presumption against the enforceability of the exclusion, the court applied the plain meaning of the exclusion language, and stated that the exclusion was consistent with public policy because the injured individual had decided not to purchase insurance on his own vehicle and that voiding the exclusion would serve to discourage citizens from insuring their vehicles. *Id.* at 136, 641 A.2d at 1158.

In *Eichelman v. Nationwide Insurance Co.,* 551 Pa. 558, 711 A.2d 1006 (1998), the Supreme Court addressed the situation where an individual was injured while occupying his own vehicle and was denied UIM benefits by the insurer of his parents' vehicles. The injured person did carry liability insurance but not UIM benefits on his vehicle. The exclusion language on his parents' policy provided that underinsured coverage did not apply to "[b]odily injury suffered while occupying a motor vehicle owned by you or a relative not insured for underinsured motorists coverage under this policy; nor to bodily injury from being hit by any such motor vehicle." *Id.* at 1007. As in *Windrim, supra,* the court in *Eichelman,* applying the plain meaning of the exclusion language, held that there was a lack of unanimity of opinion that the exclusion language violated public policy and, after determining that the exclusion did not go against the purposes of the MVFRL, held that the exclusion was valid because there was no "overriding public policy that forbids" an exclusion like the one at issue.

*Id.* at 1009. The court also pointed out that the injured person voluntarily chose not to pay for UIM coverage on his vehicle. *Id.* at 1010. The court reasoned that "it is only in the clearest of cases that a court may make an alleged public policy the basis of judicial decision." *Id.*

The Supreme Court next addressed a public policy challenge to the "regularly used, non-owned car" exclusion in an automobile policy in the case of *Burstein v. Prudential Property and Casualty Insurance Co.,* 570 Pa. 177, 809 A.2d 204 (2002). In *Burstein,* Mr. and Mrs. Burstein were injured in a car accident while driving Mrs. Burstein's company car. Unbeknownst to the Bursteins, Mrs. Burstein's employer only carried liability and not UIM insurance on the vehicle. When the liability coverage of the other driver in the accident did not cover their losses, the Bursteins attempted to utilize the UIM coverage on their personal automobile insurance policies through Prudential Property and Casualty Insurance Company. Prudential declined to pay UIM benefits due to the following language in the Prudential policy: "We will not pay for bodily injury to you or a household resident using a non-owned car not insured under this part, regularly used by you or a household resident." *Id.* at 207.

The trial court and the Superior Court held that this exclusion violated public policy but the Supreme Court reversed. The Superior Court held the exclusion void on the theory that the MVFRL should be construed broadly to afford the greatest possible coverage and that UIM coverage should follow the person and not the vehicle. *Id.* at 206. The Supreme Court disagreed and emphasized the clear and unambiguous language of the exclu-

sion. In its opinion, the Supreme Court quoted the following language from its opinion in *Eichelman, supra:*

"Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy . . . Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the court should not assume to declare contracts . . . contrary to public policy. The courts must be content to await legislative action." *Id.* at 207.

The Supreme Court recognized that the Bursteins paid for UIM coverage on all of their personal vehicles but held, in light of the public policy concern for the increasing costs of automobile insurance, that insurers should not be forced to underwrite risks that are not known or for which they have not been compensated. *Id.* at 208.

In 2002, the Pennsylvania Supreme Court rendered the opinion of *Prudential Property and Casualty Insurance Co. v. Colbert,* 572 Pa. 82, 813 A.2d 747 (2002), in response to the certified question of law from the United States Court of Appeals for the Third Circuit on the issue of the household vehicle exclusion. In *Colbert,* the question was whether an insurance company was liable for UIM benefits to an injured person under the policy of his parents when the injured person lived with his parents but was driving his own car which was not covered by his parents' policy. The injured person had paid

for liability and UIM coverage on his own policy and had received those benefits but he was seeking additional UIM benefits under his parents' policy. The household exclusion at issue provided that the insurer "will not pay for bodily injury to anyone occupying or struck by a motor vehicle owned or leased by you or a household resident which is not covered under this policy, or if the liability coverage of that vehicle is used to pay any portion of an insured's bodily injury liability claim." *Id.* at 751.

The court began its analysis by stating that it would apply the plain meaning of the contract unless the application would be contrary to a clearly expressed public policy. *Id.* at 752. The court held that the injured person was not entitled to UIM benefits under his parents' policy because his vehicle was not disclosed to his parents' insurer and voiding the other household car exclusion would allow the insured to receive coverage for which he has not paid. *Id.* at 753-54. The court further held that voiding the household vehicle exclusion would allow insureds to collect UIM coverage *"multiplied by the number of insurance policies on which they could qualify as an insured,* even though they only paid for UIM coverage on one policy." *Id.* at 754. (emphasis in original) Thus, the court upheld the exclusion.

In this case, the estate argues that the Erie policy household exclusion should be void because Anthony paid for UIM benefits under this policy but has not received any benefits under the policy. It is true that Anthony paid the premiums for UIM coverage under the policy at issue. However, the estate is not seeking benefits for which it paid, it is seeking benefits that were specifically excluded from the coverage of the Erie policy. Thus, the question

before this court is whether the estate should be entitled under the circumstances to receive more benefits than that for which it paid on the ground of public policy?

It must be said that the attorneys for both sides argued their issues very ably in this case. The estate's legal argument and factual distinctions were considered carefully. Although the estate argues that it should have been permitted to develop the factual circumstances of this case further, this court determines as a matter of law that no genuine issue of fact exists in this case and that Erie is entitled to judgment as a matter of law. See *Old Guard Insurance Co. v. Houck,* 801 A.2d 559 (Pa. Super. 2002) (ruling by way of judgment on the pleadings that a household vehicle exclusion did not violate public policy); *Kelly v. Nationwide Insurance Co.,* 414 Pa. Super. 6, 606 A.2d 470 (1992) (ruling by way of judgment on the pleadings that a policy exclusion barring vehicles insured under the liability coverage of the policy from being considered as an underinsured vehicle did not violate public policy).

The purpose of the household vehicle exclusion is to limit an insurer's liability for accidents which involve vehicles that are not insured under its policy but are more likely to be driven or occupied by an insured than third-party vehicles because they are owned by a household member. See *Nationwide Mutual Insurance Co. v. Harris,* 826 A.2d 880, 882-83 (Pa. Super. 2003). It is true that earlier cases in Pennsylvania that addressed the exclusion applied a presumption against enforcing the household exclusion. See *Paylor,* 536 Pa. at 595, 640 A.2d at 1240 ("Allowing the 'family car exclusion' to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage is

a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL"). Yet, in the three cases decided after *Paylor* which have addressed the household vehicle exclusion, the Supreme Court has neither referred to nor applied any presumption against enforcing the exclusion and has otherwise "expanded the applicability of the 'household exclusion.' " *Old Guard Insurance Co. v. Houck*, 801 A.2d 559, 563 (Pa. Super. 2002) (quoting *Eichelman v. Nationwide Insurance Co.*, 551 Pa. 558, 711 A.2d 1006 (1998), and citing *Hart v. Nationwide Insurance Co.*, 541 Pa. 419, 663 A.2d 682 (1995), and *Windrim v. Nationwide Insurance Co.*, 537 Pa. 129, 641 A.2d 1154 (1994)); see also, *Rudloff v. Nationwide Mutual Insurance Co.*, 806 A.2d 1270, 1272-73 (Pa. Super. 2002) (also recognizing the Supreme Court's shift in "its analysis of the validity of a household exclusion to focus on contract law and public policy"). The decision by the court in *Burstein, supra,* addressing the viability of the "regularly used, non-owned" vehicle exclusion also limits the reach of public policy to void exclusionary language in automobile policies.

In this case, the insured was not a driver of the vehicle involved in the accident, he was a passenger. Insurance companies typically cover their named insureds when they are involved in accidents as passengers in vehicles that are not covered by the insured's policy; thus, the fact that the insured was a passenger in his parents' vehicle as opposed to the vehicle of a third-party would not constitute an unknown risk to the insurer but it would likely constitute an expanded risk. Because of the expanded risk an insurer faces from non-covered household vehicles, there is certainly a reasonable justification for an insurer to ex-

clude coverage for accidents involving such household vehicles. In turn, allowing household exclusions should reduce the cost of an insured's premium.

The MVFRL has been described as reflecting a "legislative concern for the spiralling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." *Paylor,* 536 Pa. at 587, 640 A.2d at 1235; see also, *Colbert,* 813 A.2d at 753; *Burstein,* 809 A.2d at 208 n.3; *Eichelman,* 711 A.2d at 1008; *Windrim,* 537 Pa. at 134, 641 A.2d at 1157-58. In *Rudloff v. Nationwide,* the Superior Court reiterated the standard that appeared in *Eichelman, supra,* and *Old Guard, supra,* to be applied as follows: "that a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy [and] this court is mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract." *Rudloff,* 806 A.2d at 1273 (quoting *Old Guard,* 801 A.2d at 566 (quoting *Eichelman,* 711 A.2d at 1008)).

Applying the exclusion in this case means that the estate recovered UIM benefits under Anthony's parents' and not under Anthony's own automobile policy. This court does not find such a result contrary to public policy, although the estate is not trying to convert UIM coverage into liability coverage, because the vehicle in which Anthony was located was his parents' vehicle and not the vehicle covered under the Erie policy and because the estate received UIM benefits from Anthony's parents' policy. Our appellate courts have rejected the argument that UIM benefits follow the person rather than the vehicle in the face of a clear household vehicle exclusion absent a dominant public policy or the violation of

ethical or moral standards, which this court does not find here. See *Burstein, supra.*

The MVFRL provides a priority of recovery for injured claimants seeking UIM coverage. See 75 Pa.C.S. §1733. Insureds must first recover from any policy covering the motor vehicle occupied by the injured person at the time of the accident before recovering from any policy covering a motor vehicle not involved in the accident. 75 Pa.C.S. §§1733(a)(1)-(a)(2). Although the MVFRL permits an insured to receive UIM benefits from multiple policies, the Supreme Court in *Colbert, supra,* expressed the concern that voiding the household exclusion "would empower insureds to collect UIM benefits *multiplied by the number of insurance policies on which they could qualify as an insured* even though they only paid for UIM coverage on one policy." *Colbert,* 813 A.2d at 754. (emphasis in original)

In light of the above case law and the circumstances of this case, this court holds that an automobile insurance policy exclusion barring an insured who was a passenger in a household vehicle from receiving UIM benefits under his own policy due to the household exclusion is not void as against public policy when the insured received UIM benefits from the policy covering the household vehicle. This opinion does not address the situation where insureds do not receive UIM benefits or receive less UIM benefits from the policy covering the household vehicle than they would have received under their own policy absent the exclusion because these facts were not before the court.